UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 3:25-CV-2784-X |
| v. | § § | |
| TRIPLE D BAR AND GRILL LLC, et al. | § § § | |
| *Defendants.* | § § § | |

**<u>MEMORANDUM OPINION AND</u>**
**<u>FINAL JUDGMENT</u>**

Plaintiff G&G Closed Circuit Events, LLC (G&G) sued Triple D Bar and Grill LLC, d/b/a Triple D Bar & Grill; Trena Lewis, individually; and Terrance M. Lewis, individually (collectively "Defendants") for illegally intercepting the closed-circuit telecast of the October 15, 2022 Deontay Wilder v. Robert Helenius World Heavyweight Fight Program (Event).   G&G obtained the clerk's default on liability. (Doc. 12).   Now G&G seeks a default judgment against Defendants that includes statutory damages, additional damages, and attorney's fees.   (Doc. 11).   For the reasons below, the Court **GRANTS IN PART** the motion for default judgment and enters final judgment in favor of G&G.

### I. Background

G&G is exclusively authorized to sub-license the Event at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants and the like

1

throughout Texas.

Triple D Bar & Grill (Defendants' Establishment) is a commercial establishment and open to the public.   The Event was shown and exhibited at Defendants' Establishment, and done so willfully, knowingly, and purposely, as evidenced by their advertisement of the Event.   Defendants, however, did not receive permission or authorization from G&G to show the Event at the Defendants' Establishment.   Nor did Defendants pay G&G a licensing fee in order to show the Event at Defendants' Establishment.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment.   A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.   If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.   The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial— when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.[1]

A default requires a court to accept as true a plaintiff's well-pled allegations in a

---

[1] FED. R. CIV. P. 55(b)(2).

complaint.[2]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[3] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[4] Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[5]

## III. Application

The Court deems the facts on liability to be admitted and finds Defendants not to be incompetent or a minor. While Rule 55 allows for hearings, it does not command them. G&G's motion is supported by a declaration. As a result, a ruling without a hearing is proper.

### A. Procedural Appropriateness of Default Judgment

---

[2] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[3] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[4] *Id.*

[5] *Nishimatsu Constr. Co., Ltd. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Court now turns to the six *Lindsey* factors.    First, there are no material facts in dispute because Defendants have failed to appear or otherwise defend the action.    Second, Defendants' failure to defend the action has brought adversarial proceedings to a halt and thus has prejudiced G&G.    Third, default is proper due to Defendants' failure to appear via licensed counsel to defend this action.    Fourth, Defendants have not offered any evidence that it is acting under a good faith mistake or excusable neglect.    Fifth, nothing suggests that it would be too harsh to enter default judgment against Defendants, who received ample notice of the action and sufficient time to respond.    The sixth factor is whether the Court would grant a motion to set aside the default.    Defendants' lack of defense indicates a lack of good cause for the Court to set aside the default judgment.    Thus, the Court concludes that a default judgment is appropriate under these circumstances.

## B. Sufficiency of G&G's Claim

Next, the Court must assess the merits of G&G's piracy claim.    Although Defendants, by virtue of their default, are deemed to have admitted G&G's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[6]

The Federal Communications Act (FCA) combats against the piracy of radio and television signals.[7]    The FCA prohibits "intercept[ing] any radio communication

---

[6] *Id.*

[7] *See* 47 U.S.C. §§ 553, 605.

4

and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person" without authorization from the sender.[8]   Because the FCA is a strict-liability statute, G&G need only show that (1) the programs were shown in Defendants' Establishment; (2) the programs were shown without G&G's authorization; and (3) G&G is the exclusive licensee.[9]

G&G is entitled to default judgment because it has demonstrated each of these elements.   First, G&G alleges that the Event was shown in Defendants' Establishment.[10]   Second, G&G alleges that it did not authorize Defendants to show the Event.[11]   Third, G&G alleges that it was the exclusive license.[12]   Because these allegations are enough to raise G&G's right to relief above the speculative level, the Court finds that default judgment is warranted here.[13]

Accordingly, G&G's claim is substantively meritorious.   While default judgments are "a drastic remedy, not favored by the Federal Rules," G&G's entitlement here is beyond dispute.[14]   Thus, the Court must next "determine what form of relief, if any, the plaintiff should receive."[15]

---

[8] 47 U.S.C. § 605(a).

[9] *J&J Sports Prods., Inc. v. El 33, LLC*, No. EP-11-CV-519-KC, 2013 WL 164521, at *3 (W.D. Tex. Jan. 14, 2013).

[10] Doc. 1 at 4; *see* Doc. 11-1 at 23–24 (affidavit of eyewitness Staton Troutman who visited Defendants' Establishment).

[11] Doc. 1 at 5.

[12] *Id.* at 3–4.

[13] *See Wooten*, 788 F.3d at 498.

[14] S*ee Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (1989).

[15] *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.,* 126 F. Supp. 3d 809, 813 (N.D. Tex

### C. Damages

G&G asks the Court seeks $10,000 for statutory damages, $50,000 in additional damages, and $20,000 in attorney's fees and of costs.

*Statutory Damages*

G&G presents evidence that Defendants would have paid G&G a sublicensing fee of $1,000 to lawfully broadcast the Event.[16]   Because only awarding the amount a defendant would have been charged for a sublicense fee is insufficient to deter piracy, courts generally disfavor only awarding that amount.[17]   But $10,000 is excessive and the Court concludes that three times the licensing fee is reasonable. Thus, the Court awards $3,000 in statutory damages in this action.

*Willful Damages*

G&G maintains that "because of the absence of any way in which Defendants could have 'innocently' accessed the broadcast of the Event, it is apparent that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage."[18]   And courts have generally accepted this reasoning.[19]   G&G seeks $50,000—five times its requested statutory

---

Aug. 28, 2015) (Boyle, J.).

[16] Doc. 11-1 at 7.

[17] *See G&G Closed Circuit Events LLC v. Dallas Tacos Pancho Inc.*, No. 3:23-CV-2778-S, 2025 WL 1757296, at *6 (N.D. Tex. May 15, 2025) (Horan, M.J.) (collecting cases), report and recommendation adopted, No. 3:23-CV-2778-S, 2025 WL 1756378 (N.D. Tex. June 25, 2025) (Scholer, J.).

[18] Doc. 11 at 9.

[19] *Dallas Tacos*, 2025 WL 1757296, at *7 (N.D. Tex. May 15, 2025) (Horan, J.).

damages.   But a multiplier such as this is reserved generally reserved illegal transmissions for a large number of patrons.[20]

Here, G&G's submits evidence that only ten patrons were counted inside Defendants' Establishment on three occasions.[21]   So a five-times multiplier is unwarranted, and the Court concludes that additional damages amounting to three times the statutory damages award is more appropriate. Thus, G&G shall be awarded $9,000 in additional damages.

*Attorney's Fees and Costs*

Finally,   G&G   seeks   an   award   of   attorney's   fees   under 47 U.S.C. § 605(e)(3)(B)(iii) for one-third of the amount of its requested $60,000 recovery.   While the Court will award fees, the Court prefers the time-honored lodestar method to ensure G&G's attorney recovers no more but no less than he earned.   Fortunately, counsel diligently proved up his hourly rate times hours worked as an alternative basis for fees.   The Court finds his hourly rate of $300 an hour for anti-piracy litigation (given his experience in the field) and his 8 hours worked on the matter (proven by line-item entries) to be reasonable and necessary. Accordingly, the Court awards attorney's fees of $2,400 in addition to statutory damages.   In the event Defendants engage in litigation in the future, the Court will

---

[20] *See G&G Closed Circuit Events, LLC v. Bar Sante Fe LLC*, No. 3:23-CV-370-S, 2024 WL 3237175, at \*7 (N.D. Tex. June 6, 2024) (Horan, J.) (collecting cases), report and recommendation adopted, No. 3:23-CV-0370-S, 2024 WL 3240675 (N.D. Tex. June 28, 2024) (Scholer, J.)

[21] Doc. 11-1 at 23.

award supplemental fees at the appropriate time.

G&G is also entitled to costs of Court.    It should file a bill of costs within fourteen days.

Finally, G&G is entitled to post-judgment interest as allowed by law.[22]

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** G&G's motion for default judgment against Defendants.    The Court awards G&G $3,000 in statutory damages, $9,000 in additional willful damages, $2,400 in attorney's fees, and post-judgment interest of 3.56%.    This is a final judgment.    All other relief not expressly granted is denied.

**IT IS SO ORDERED** this 7th day of April, 2026.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[22] *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .    Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.").    The 1-year average Treasury yield on March 30, 2026, was 3.56%.    *See* Selected Interest Rates (Daily) - H.15, Board of Governors of the Federal Reserve System, March 30, 2026, *at* https://www.federalreserve.gov/releases/h15/.